UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PLATTE RIVER INSURANCE COMPANY, )
a Nebraska corporation, )
) Case No.: 2:20-cv-00723-GMN-EJY
             Plaintiff, )
) **ORDER**
   vs. )
)
YAN HONG LIU dba C&L ENTERPRISE, a )
Nevada individual and sole proprietor, *et al.* )
)
            Defendant. )

Pending before the Court is the Motion for Summary Judgment, (ECF No. 60), filed by Plaintiff Platte River Insurance Company ("Plaintiff"). Defendant YAN HONG LIU d/b/a C&L ENTERPRISE ("Defendant") filed a Response, (ECF No. 66), to which Plaintiff filed a Reply, (ECF No. 71). For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

**I.  BACKGROUND**

This dispute arises from a $600,000 bond (the "Bond") Plaintiff issued to United Franchise Partners, LLC ("UFP") for work related to the construction of a Dickey's BBQ Franchise at Meadows Mall in Las Vegas, Nevada. (Mot. Summ. J. ("MSJ") 3:4–12, ECF No. 60). Plaintiff alleges that in issuing the Bond, it relied on various documents submitted by UFP and signed by Defendant, UFP's sub-contractor. (*Id.* 4:13–18). Specifically, Plaintiff contends it was provided by UFP, in the course of the Bond application: (1) the August 18, 2017, contract (the "August 2017 Contract") between UFP and Defendant noting Defendant was being contracted to perform work at the construction project for $400,000; (2) a letter dated September 18, 2017 (the "September 2017 Letter"), signed and executed by Yan Hong "Susan" Liu ("Ms. Liu") on behalf of Defendant indicating that UFP paid Defendant in full for all work

on the project; and (3) a "Waiver and Release Upon Final Payment" (the "Waiver and Release") executed by Ms. Liu on behalf of Defendant, which stated Defendant had been "paid in full for all work," and which waived "any private bond right" and claims for payment. (*See generally id.*). Plaintiff alleges it would not have issued the Bond, but for its reliance on the documents. (*Id.* 4:18–21).

Defendant contends a dispute arose between it and UFP after Defendant completed a substantial amount of the contracted work without payment. (Resp. 11:9-13). In a separate state court suit, Defendant obtained summary judgment against UFP after UFP failed to contest Defendant's motion. (MSJ 3:6–8).

Relying on the state court action, Defendant, in a letter executed by its counsel and sent to Plaintiff, asserted a claim against the Bond. (*See* Compl. ¶ 37, ECF No. 1). Plaintiff sought declaratory judgment in this Court, arguing: (1) Defendant may not enforce the summary judgment grant to recover against Plaintiff; (2) the contract between UFP and Defendant was void *ab initio* because Defendant contracted in excess of its license limit in contravention of Nevada law; (3) Defendant unconditionally waived and released all claims against UFP and the Bond; and (4) the doctrine of unclean hands bars Defendant from recovering against the Bond. (*Id.* ¶ 42). Plaintiff then filed the instant Motion for Summary Judgment, (ECF No. 60).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount

of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    DISCUSSION**

Plaintiff moves for summary judgment on its first cause of action, which seeks declaratory judgment against Defendant.  Plaintiff argues the Court should grant summary judgment because: (1) Defendant waived and released its right to recover from the Bond; (2) the contract for which the Bond was issued was void, and thus cannot form the basis for a bond claim; and (3) estoppel and unclean hands bar Defendant's claim. (*Id.* 5:1–8).  Defendant

argues, among other things, that summary judgment is inappropriate because a dispute of material facts exists. (*See* Resp. 4:1–9:4, ECF No. 66).  The Court begins its analysis by discussing the Plaintiff's argument that Defendant's contract with UFP was void as a matter of law.

**A.  Contract Claim**

The parties dispute which contract was the operative contract for which Defendant and UFP executed.  Plaintiff alleges that the operative contract, for which Plaintiff issued the Bond, was executed on August 18, 2017. (*See* MSJ 14:3–6).  Moreover, Plaintiff contends that the August 2017 Contract is void *ab initio* under Nevada law because Defendant's bid of $400,000 exceeded the $250,000 limit placed on its license. (*Id.* 15:15–16).  Plaintiff cites Nevada Administrative Code ("NAC") Section 624.640(1), which notes, "If a licensee bids or contracts outside the scope of his or her license or exceeds the monetary limit placed on the license, the bid or contract is void."

Defendant does not dispute that the August 2017 Contract would have violated Nevada law.  Instead, Defendant argues the August 2017 Contract was a proposal, and the operative contract was dated October 7, 2017 (the "October 2017 Contract"), which included a bid for $134,500. (*See* Resp. 2:27–28).  Defendant additionally contends that the October 2017 Contract *amended* the August 2017 Contract. (*Id.* 2:28 (citing Liu Depo. at 32, Ex. A to Resp., ECF No. 66-2)).

Even if the Court accepts Plaintiff's argument that the August 2017 Contract was the original contract, and the October 2017 Contract amended the August 2017 Contract, the Court would nonetheless find that the amendment created a valid, enforceable contract.  Plaintiff contends that Defendant may not amend the contract because there is "no existing contract to amend." (*Id.* 18:12,).  In support of its argument, Plaintiff cites *Aa Primo Builders, LLC v. Washington*, No. 65804 (Nev. Nov. 24, 2015), wherein the Nevada Supreme Court held a

contract was void *ab initio* because the appellant had placed a bid that exceeded the limit on its license. *Id.*, at *3. However, the parties in that case had not attempted to amend the contract at issue to bring it in compliance with the law. Therefore, the Nevada Supreme Court's decision in *Aa Primo Builders* is not instructive. Adopting Plaintiff's argument would erase the practical effects of amendment. Black's Law Dictionary defines "amend" as "to make right; to correct or rectify[.]" *Amend*, Black's Law Dictionary (8th ed. 2004). Thus, where an amendment does not cure a contractual defect, the contract is void and unenforceable; however, where, as here, the amendment seeks to "make right" or "rectify" any defects, the amendment creates a valid, enforceable contract.

The Court thus finds that October 2017 Contract is valid and enforceable. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment with respect to Plaintiff's argument that declaratory judgment is warranted because the contract was void.

**B. Waiver and Release of Claims**

Plaintiff argues that Defendant waived its right to recover from the Bond after Defendant "unequivocally asserted in writing" that Defendant had been paid in full. (MSJ 13:1–5). Plaintiff cites two documents; the first being the September 2017 Letter signed by Ms. Liu. The letter noted, "Please be advised UFP DKY Store 102 has paid [its] balance in full in the amount of $400,000 for Dickey's Barbecue tenant improvements including construction, material[,] and change orders for Meadows Mall Space 5020. This payment satisfies all amounts due to C & L Enterprises [and] its Sub-Contractors associated with the above referenced project." (September 17 Letter, Ex. 9 to MSJ, ECF No. 60-10).

Shortly after, Defendant delivered to UFP the Waiver and Release—the second document which Plaintiff relies—which notes, "The Undersigned has been paid in full for all work materials and equipment furnished to his Customer for the above described Property, and does hereby waive and release any notice of lien, any private bond right, any claim for payment

and any rights under any similar ordinance, rule or statute related to payment rights that the undersigned has on the above described Property, except for the payment of Disputed Claims, if any, noted above." (UFP Waiver & Release, Ex. 11 to MSJ, ECF No. 60-12).  Plaintiff thus contends that Defendant "undeniably and knowingly executed and delivered a letter representing payment was received in full," thereby "waiving and releasing all claims," including its claim against the Bond. (MSJ 14:16–20).

A waiver or release agreement is governed by basic contract principles.  *See e.g., In re Amerco Derivative Litigation*, 252 P.3d 681, 693 (Nev. 2011) (noting that, under Nevada law, settlement agreements are contracts "governed by principles of contract law") (citation omitted). Accordingly, the Court must determine whether Defendant entered into a valid contract with UFP when it signed the September 2017 Letter and Waiver and Release.  Under Nevada law, basic contract principles require, at minimum, "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (footnote omitted).   "The question of whether a contract exists is one of fact." *Id.*  Here, Plaintiff argues the September 2017 Letter and Waiver and Release are valid and enforceable, and thus Defendant may not assert any rights for payment allegedly owed. (MSJ 14:16–20).  Plaintiff additionally alleges that, "either [Defendant] was paid in full . . . or [Defendant] is lying." (Reply 7:7, ECF No. 71).

Defendant, however, argues that Ms. Liu signed and executed the September 2017 Letter and the Waiver and Release because Robert Marshall ("Mr. Marshall"), a representative for UFP, told Ms. Liu she had to do it for the project to continue.[1] (*Id.* 15:15–17).  Ms. Liu further

---

[1] Defendant cites Ms. Liu's testimony during her deposition wherein Ms. Liu noted the release and waivers were signed to "clear out" the August 17, 2017 proposal.  (*See generally* Liu Depo. at 202–205, Ex. A to Resp., ECF No. 66-2).  In other words, Ms. Liu testified she believed the waiver and releases would clear out the August 2017 Contract and would waive her rights to seek payment under the August 2017 Contract but did not waive her right to seek payment for any work completed under the October 2017 Contract. (*Id.* at 203 ("[Mr. Marshall] telling me to – since we going to start the new contract, we don't want to mess it up because you signed the name

attested that it was not her intent to waive Defendant's rights to any payment for future work completed, including work completed under the October 2017 contract. Rather, Defendant contends that Ms. Liu had signed the waiver and release documents because she believed, based on Mr. Marshall's representations, that it was required for the project to continue. (*Id.*).

At this stage, and viewing all facts in the light most favorable to the Defendant, the Court finds that the evidence supports Defendant's contention that the documents were not intended to have any practical effect, and Defendant did not intend to waive its rights to any payment for work completed. The Court therefore DENIES Plaintiff's Motion for Summary Judgment on Plaintiff's waiver and release of claims argument.

**C. Doctrine of Estoppel**

Plaintiff contends that Defendant should be estopped from recovering against the Bond because of Defendant's "all around conduct" in the matter.[2] (MSJ 18:16–17). Specifically, Plaintiff argues that Defendant should not be permitted to "benefit[ ] from its unlawful and improper conduct," again arguing that Defendant violated Nevada law when it allegedly contracted above its license limits. (*Id.* 19:11–13). As noted above, however, Defendant produced evidence that the August 2017 Contract—the allegedly unlawful contract—was not the operative contract, and the actual contract to which Defendant and UFP executed was the October 2017 Contract, which included a bid price well under Defendant's license limit. (*See supra* p. 7:5–10; *see also* Resp. 2:27–28).

///

---

on the $400,000 proposal over there, so he asked me to give him the release. I said okay, so anyway, I'm not doing that job.")).

[2] Plaintiff's Complaint raises a separate estoppel claim. In its Complaint, Plaintiff appears to argue that Defendant may not enforce the Nevada state court's judgment against Plaintiff because Defendant cannot, under the doctrine of collateral estoppel, enforce a judgment against an individual or party that was not previously a party to the prior lawsuit. (Compl. 11:21−12:2). Because the Plaintiff has not briefed the issue of collateral estoppel in its Motion for Summary Judgment, the Court declines to opine on the issue.

Because Plaintiff has not provided evidence refuting Defendant's arguments, the Court finds that the August 2017 Contract cannot currently serve as the basis to bar Defendant from seeking to recover their alleged damages against the Bond under the doctrine of estoppel. Plaintiff's Motion for Summary Judgment is DENIED with respect to Plaintiff's estoppel argument.

**D. Unclean Hands**

Plaintiff additionally contends that the doctrine of unclean hands precludes recovery. The doctrine of unclean hands "bars relief to [a party] who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a [party] who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys. v. Arcour Leasing Sys.*, 890 F.2d 165, 173 (9th Cir. 1989). The party asserting an unclean hands defense must demonstrate that the other parties' "conduct is inequitable and that the conduct relates to the subject matter of the claim." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003).

Plaintiff argues that the following actions by Defendant support Plaintiff's unclean hands defense: (1) Defendant submitted an unlawful bid; (2) Defendant executed potentially invalid waivers and releases; (3) Defendant knowingly retained subcontractors that submitted bids in excess of their license limits; and (4) Defendant colluded with its subcontractors to present invoices in excess of the actual charged amounts.

Apart from conclusory statements, Plaintiff does not provide factual evidence supporting its contentions that Defendant knowingly retained subcontractors that placed bids exceeding their license limits, and that Defendant colluded with its subcontractors to submit invoices exceeding the actual amount spent.

Moreover, the Court has already discussed Defendant's alleged submission of an unlawful bid and found that Defendant remedied any deficiencies in the contract through the October 2017 Contract. As noted, Ms. Liu testified she believed she was required to sign the

waivers for the project to continue, but that she did not intend to waive her rights to any future work or payments. Plaintiff has not provided evidence refuting Ms. Liu's testimony. Accordingly, viewing all facts in the light most favorable to the Defendant, the Court finds that Plaintiff has not provided sufficient evidence that would support Plaintiff's unclean hands defense.

Based on the foregoing, the Court DENIES Plaintiff's Motion for Summary Judgment with respect to Plaintiff's argument concerning the doctrine of unclean hands.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 60), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall have thirty days from the date of this Order to file a jointly proposed pretrial order.

**DATED** this __26__ day of May, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court